**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff,**

          **v.**                    **Criminal No.** 08-310 (FAB)

WILFREDO ROSARIO-CAMACHO [4],

    **Defendant.**

**OPINION AND ORDER**

Before the Court is defendant Wilfredo Rosario-Camacho's ("Rosario")[1] motion to withdraw his guilty plea. (Docket Nos. 4729 and 4911.) Defendant Rosario alleges, *inter alia*, that this Court participated in plea negotiations contrary to Federal Rule of Criminal Procedure 11(c)(1) ("Rule 11"). (Docket Nos. 4911 and 4928.) Consequently, defendant Rosario seeks to withdraw his guilty plea, and requests that this case be reassigned to another district court judge. (Docket No. 4928 at p. 8.) For the following reasons, the Court: (1) **GRANTS** defendant Rosario's motion to withdraw his guilty plea, and (2) **REFERS** this case to the Clerk of the Court for reassignment to another district judge.

**I.    Background**

On September 2, 2008, a grand jury returned an indictment charging defendant Rosario with, among other offenses, conspiring

---

[1] Defendant Rosario is also known as Tito Kilo.

to possess with intent to distribute controlled substances within 1,000 feet of a public school, and conspiring to use and carry firearms during, and in relation to, a drug trafficking crime. See Docket Nos. 4 and 2663.[2]

After a three-month trial, a jury found defendant Rosario guilty of counts one through six of the indictment.[3] (Docket No. 2663.) The Court also entered a preliminary order of forfeiture as to all defendants pursuant to what the government incorrectly labeled as count 14 of the indictment. (Docket No. 2664.) Defendant Rosario received a sentence of life imprisonment as to counts one through five (*i.e.*, the drug trafficking counts), and a consecutive 240-month sentence as to count six (*i.e.*, the firearm conspiracy count). (Docket No. 3136.)

---

[2] Seventy four individuals were named in the indictment. (Docket No. 4.) With the exception of defendant Rosario, all other defendants either have pled guilty or have been convicted at trial.

[3] The jury found defendant Rosario guilty of (1) conspiring to possess with intent to distribute controlled substances within 1,000 feet of a public school, (2) aiding and abetting in the possession with intent to distribute heroin within 1,000 feet of a public school, (3) aiding and abetting in the possession with intent to distribute crack cocaine within 1,000 feet of a public school, (4) aiding and abetting in the possession with intent to distribute cocaine within 1,000 feet of a public school, (5) aiding and abetting in the possession with intent to distribute marijuana, and (6) conspiring to use and carry firearms during and in relation to a drug trafficking crime. (Docket No. 2663.)

On June 25, 2015, the First Circuit Court of Appeals vacated the convictions of defendant Rosario and the other defendants who were tried with him because "the closure of the courtroom during jury selection was a structural error." United States v. Negrón-Sostre, 790 F.3d 295, 311 (1st Cir. 2015). The First Circuit Court of Appeals, however, noted that "there was sufficient evidence to establish that each of the defendants aided and abetted each of the others in the possession with intent to distribute all of the types of drugs charged." Id. at 311. The government pursued the conviction of defendant Rosario in a second prosecution. During the first status conference in anticipation of the second trial, "the Court recommended defendants to consider the possibility of entering into plea agreements with the government" because, according to the First Circuit Court of Appeals, "there was sufficient evidence to sustain the defendants' convictions." (Docket No. 4550.)

At the final status conference held on February 17, 2016, the Court set a trial date for March 28, 2016. (Docket No. 4655.) Defendant Rosario filed a change of plea motion on February 24, 2016, noting that the parties reached a plea agreement. (Docket No. 4661.) The government and defendant Rosario proposed a "C" plea agreement pursuant to Federal Rule of Criminal Procedure 1(c)(1)(C); under the terms of the parties' agreement,

defendant Rosario admitted guilt as to count one, with a stipulated offense level of 38. (Docket No. 4673.) At the change of plea hearing on March 1, 2016, the Court stated that "[b]ecause this is a C plea, I will wait for the presentation of the pre-sentence investigation report before accepting the plea." (Docket No. 4672.) The United States Probation Officer assigned to this case filed the pre-sentence investigation report ("PSR") on May 18, 2016. (Docket No. 4724.) Defendant Rosario filed a *pro se* motion to withdraw his guilty plea on May 31, 2016. (Docket No. 4729.) The Court never entered an order accepting defendant Rosario's guilty plea after the PSR was filed.

In his *pro se* motion, defendant Rosario argues that he is entitled to withdraw his guilty plea for the following reasons: prosecutorial misconduct, the relationship between defense counsel and the government attorney resulted in a conflict of interest, there was fabricated evidence presented at the first trial, that

a "package plea offer"[4] coerced him to admit culpability, and the

government withheld discovery. (Docket No. 4729.) In a separate

motion, defendant Rosario further argued that the "record shows a

violation of the Criminal Procedure Rules: Plea Agreement

Procedures, 11(c)(1)." (Docket No. 4820 at p. 5.) The Court

appointed Assistant Federal Defender Judith Mizner to represent

defendant Rosario in January 2017.[5] Defendant Rosario, through

---

[4] Defendant Rosario also argues that the package plea deal offered
by the government "exerted pressure affecting the voluntariness of
defendant's plea." (Docket No. 4911 at p. 14.) Package plea
agreements are inherently suspect because they "create a
significant risk that one defendant will plead guilty against his
will in order for his co-defendants to obtain the offered benefit."
United States v. Abbott, 241 F.3d 29, 31 (1st Cir. 2001). To
ensure that defendants are not pressured by package plea offers,
courts must "guard against the risk of co-defendant coercion" at
the change of plea hearing. United States v. Ortiz-Torres, 449
F.3d 61, 69 (1st Cir. 2006). The First Circuit Court of Appeals
has held that specifically asking a defendant whether named co-
defendants threatened or coerced him or her into pleading guilty
is sufficient to ensure the knowing and voluntary nature of a
guilty plea. Id. In dicta, the First Circuit Court of Appeals
has also stated that asking the defendant whether he was coerced
by "anybody" or "anyone" "was likely sufficient" in the package
plea agreement context. Id. During the change of plea hearing in
this case, the Court asked defendant Rosario: "Has anyone made any
promise or assurance to you of any kind in an effort to induce you
to sign the plea agreement?" (Docket No. 4867 at p. 24.) His
answer was "no." Id. The colloquy conducted by this Court
adequately addressed whether defendant Rosario's co-defendants
pressured him to accept the package plea agreement. None did.

[5] Defense attorneys Francisco Dolz-Sanchez, Ignacio Fernandez De-
Lahongrais, and Jose Gaztambide-Añeses previously represented
defendant Rosario in this case.

counsel, then submitted a supplemental motion to withdraw his guilty plea on May 18, 2017. (Docket No. 4911).[6]

## II. Withdrawal of Defendant Rosario's Guilty Plea Pursuant to Rule 11(d)(1)

Pursuant to Federal Rule of Criminal Procedure 11(d)(1), "[a] defendant may withdraw a guilty a plea . . . before the court accepts the plea, for any reason or no reason."  At defendant Rosario's change of plea hearing, the Court explicitly stated that it would "wait for the presentation of the pre-sentence investigation report **before accepting the plea**." (Docket No. 4867 at p. 27, emphasis added.)  To date, the Court has never accepted defendant Rosario's plea.  Accordingly, defendant Rosario has an absolute right to withdraw his guilty plea pursuant to Fed.R.Crim.P. 11(d)(1).

In opposing defendant Rosario's motion, the government asserts that the Court accepted the guilty plea but not the plea agreement, arguing that "acceptance of the plea and acceptance of the plea agreement are not the same thing." (Docket No. 4946 (citing United States v. Hyde, 520 U.S. 670, 674 (1997) ("[G]uilty

---

[6] The government opposed the motion to withdraw defendant Rosario's guilty plea. (Docket No. 4925.)  Defendant Rosario replied, and filed a supplement to the supplemental motion to withdraw his guilty plea. (Docket Nos. 4928 and 4929).  The government again responded, and defendant Rosario replied. (Docket Nos. 4946 and 4958.)

pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time.")).)  The government's argument that guilty pleas and plea agreements are distinct from each other is true, but irrelevant.  Notably, at the change of plea hearing the Court did not state that its acceptance of the **plea agreement** remained contingent on the PSR; rather, it stated that it would review the PSR before accepting the "**plea.**"  (Docket No. 4867 at p. 27, emphasis added.)

The circumstances of this case are similar to those of United States v. Shaker, 279 F.3d 494 (7th Cir. 2002).  In Shaker, the trial judge stated the following at the change of plea hearing:

> I am deferring my decision on acceptance or rejection of your plea of guilty and your plea agreement until after I've had an opportunity to study the Pre-sentence Report.  If your plea of guilty and your Plea Agreement are then accepted, I will so advise you.

279 F.3d at 496.  Following the change of plea hearing, but before the trial judge accepted the plea, the defendant moved to withdraw his plea; the trial judge denied the motion.  The Seventh Circuit Court of Appeals held that, because the district court had not accepted the defendant's guilty plea, he "should have permitted [defendant] to withdraw his plea freely, without any inquiry into [defendant's] reasons for seeking to set it aside."  Id. at 498; see also United States v. Battle, 499 F.3d 315, 328 (4th Cir. 2007) (defendant possessed the absolute right to withdraw his guilty

plea after, at the change of plea hearing, the court stated "that the guilty plea will not be accepted or rejected by the court until a presentence report is available for the court's consideration").

This Court's statements at the change of plea hearing indicated that acceptance of the plea would be deferred until the Court reviewed the PSR. Because the Court never entered an order formally accepting defendant Rosario's plea, he is entitled to withdraw his guilty plea pursuant to Fed.R.Crim.P. 11(d)(1).[7]

**III. Rule 11(c)(1)**

Rule 11 provides that counsel for the defense and the government may discuss and reach a plea agreement. Fed.R.Crim.P. 11(c)(1). The Court, however, "must not participate in these discussions." Id. Judicial participation in the plea negotiation process "carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement."

---

[7] Because defendant Rosario is entitled to withdraw his guilty plea pursuant to Fed.R.Crim.P. 11(d)(1), the Court need not hold an evidentiary hearing to address whether the prosecutor had a conflict of interest, or whether there is a "fair and just" reason to allow him to withdraw his guilty plea pursuant to Fed.R.Crim.P. 11(d)(2). See Docket No. 4911 at 15. Furthermore, no need exists for the Court address other issues raised in defendant Rosario's submissions – whether: (1) false evidence was proffered at the first trial, (2) the government failed to comply with discovery obligations, or (3) the packaged nature of the plea agreement was so coercive as to render the plea involuntary. The Court should, nonetheless, evaluate whether it participated in plea negotiations contrary to Fed.R.Crim.P. 11 because this issue has bearing on whether the Court should continue to preside over this matter.

United States v. Bierd, 217 F.3d 15, 18 (1st Cir. 2000) (no Rule 11 violation when the judge at sidebar during trial stated "why doesn't [defendant] plead out, get the three levels he's entitled to and then that will accomplish the severance, but that's not for me to say."). Furthermore, the ban on judicial participation set forth in Rule 11 "preserves the judge's impartiality both during and after the plea negotiations." United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006) (internal quotation marks and citation omitted).

Defendant Rosario argues that this Court's comments during status conferences constituted judicial participation in plea negotiations. (Docket No. 4911 at p. 10.) In United States v. Davila, the United States Supreme Court rejected the proposition that judicial involvement in plea negotiations necessarily invalidates a guilty plea. 133 S. Ct. 2139, 2148 (2013) ("Nothing in Rule 11's text . . . indicates that the ban on judicial involvement in plea discussions, if dishonored, demands automatic vacatur of the plea without regard to case-specific circumstances."). In reviewing Rule 11 motions, "particular facts and circumstances [. . .] should be assessed, not in isolation, but in light of the full record." Id. at 2148-49. The relevant question, after examining the entire record, is whether it was

reasonably probable that, but for the judge's involvement, the
defendant would have exercised his right to a jury trial.  Id.

Precedent from the First Circuit Court of Appeals addressing
judicial participation in plea negotiations is limited, with just
three cases citing Davila for the proposition that, pursuant to
the plain error standard of review, a "defendant must, at a bare
minimum, show a reasonable probability that but for some error, he
would not have pleaded guilty" to establish that a guilty plea was
defective.  See United States v. Rodriguez-Adorno, 852 F.3d 168
(1st Cir. 2017); United States v. Ocasio-Cancel, 727 F.3d 85 (1st
Cir. 2013); United States v. Ramos-Mejia, 721 F.3d 12 (1st Cir.
2013).

In cases preceding Davila, courts examine whether plea
negotiations were complete or ongoing at the time of the purported
judicial participation in the context of Rule 11.  For instance,
once the parties sign a written plea agreement, "it is hard to
characterize the judge's comments as participation in any [plea]
discussions" because courts cannot participate in plea
negotiations that have concluded."  United States v. Gonzalez-
Colon, 582 F.3d 124, 129 (1st Cir. 2009); see also United States
v. Hicks, 531 F.3d 49, 52 (1st Cir. 2008) (no Rule 11 violation
when the court's alleged involvement in plea discussions post-
dated the expiration of the government's plea offer, and "defense

counsel admitted that the proposed plea agreement had 'gone by the boards weeks ago.'").

Moreover, the extent and frequency of the court's comments are particularly relevant in a Rule 11 analysis. A judge's "single brief remark during negotiations" falls short of judicial participation; but repeated exhortations to plead contravene Rule 11. Gonzalez-Colon, 582 F.3d at 130. By way of example, "off-the-cuff" remarks regarding a possible sentence does not constitute judicial participation. See Bierd, 217 F.3d at 20. To comment on the appropriate penalty for a defendant in the context of plea negotiations, however, is inconsistent with Rule 11. Id. at 20 ("Improper participation resulting in vacation occurs, for example, when a court comments on or mandates what it perceives to be an appropriate penalty for a defendant in the context of plea agreement discussions."); see also United States v. Anderson, 993 F.2d 1435, 1439 (9th Cir. 1993) (plea vacated because of court's "prospective refusal to accept a plea to fewer than the full thirty counts, and direction to the prosecutor not to offer any such deal in the future"). Vacatur of a defendant's guilty plea is warranted "when a trial judge threatens a defendant with a higher sentence if he pursues his right to a trial instead of pleading guilty." Id. at 20 (noting that "a trial judge transgressed [Rule 11], resulting in vacation of the defendant's convictions, when he

repeatedly urged the defendants to 'think carefully' about the fact that they faced life sentences upon conviction after trial, reminded them that the penalty under the sentencing guidelines would be 'so heavy, so very, very heavy,' and requested that the prosecution leave the plea offer open.") (quoting United States v. Bruce, 976 F.2d 552, 555, 558 (9th Cir. 1992)).

Additionally, judicial remarks regarding the strength of the government's case may establish a Rule 11 violation.  See United States v. Sanya, 774 F.3d 812, 820 (4th Cir. 2014) (The court participated in plea negotiations in violation of Rule 11 by "suggesting that the strength of the Government's case counseled in favor of striking a deal.").

## A. Defendant Rosario's Allegations of Judicial Participation in Plea Negotiations

Defendant Rosario refers to certain comments this Court made during status conferences in support of his motion seeking withdrawal of his guilty plea and recusal of this Court.  The government refutes defendant Rosario's contention that this Court participated in plea negotiations, arguing that litigants must apprise the Court of matters pending before it, including the status of plea negotiations.  (Docket No. 4925.)  The Court, according to the government, merely inquired about plea negotiations, never foreclosing the possibility of a trial.  Id.

(citing <u>United States v. Pagan-Ortega</u>, 372 F.3d 22, 38 (1st Cir. 2004) (pursuant to the "very considerable" plain error standard of review, the trial court's comments regarding a "super break" and "good deal" during the change of plea hearing "related to a factual and compelling comparison with the risk of conviction following a trial.") Additionally, the government emphasizes that the Court never addressed defendant Rosario directly regarding a plea agreement, and that defendant Rosario moved to withdraw his guilty plea approximately three months following the change of plea hearing, after all of the remaining defendants had pled guilty. (Docket No. 4925 at p. 11.)

A glaring omission from the government's opposition is any reference to what the Court actually said during the status conferences in this case. The government never cites to the status conference transcripts, failing to confront the comments that allegedly transgressed Rule 11. For example, although the Court never addressed defendant Rosario personally before the change of plea hearing, the Court instructed defense counsel to communicate its impressions regarding the propriety of the plea agreement to defendant Rosario. The Court stated to defense counsel: "You've got to hammer it into their heads, 25 years is better than life imprisonment." (Docket No. 4741 at p. 15.) A full review of the

status conference transcripts is necessary to fully assess whether reassignment to another judge is appropriate.

        In support of his argument that the Court participated in plea negotiations contrary to Rule 11, defendant Rosario relies on appellate court decisions vacating a defendant's guilty plea on the basis that the trial court inappropriately inserted itself in plea negotiations. See, e.g., United States v. Hemphill, 748 F.3d 666 (5th Cir. 2014) (the district court's "repeated and extensive description of adverse consequences to other defendants who rejected pleas, and its discussion of the 'success story' defendant who accepted a plea . . . simply went too far."); United States v. Adams, 634 F.2d 830 (5th Cir. 1981) (concluding that the trial judge violated Rule 11 by encouraging the defendant to plead guilty, while vacating the defendant's sentence after he was convicted at trial and remanding for a re-sentence before a different judge); United States v. Baker, 489 F.3d 366 (D.C. Cir. 2007) (holding that trial judge violated Rule 11 by, among other things, encouraging the parties to reach a plea, and emphasizing that, to the extent possible, impose a sentence similar to a lenient sentence it had imposed in another similar case); United States v. Cano-Varela, 497 F.3d 1122 (10th Cir. 2007) (holding that when trial judge informed the defendant that he "would 'be doing at least ten years in a federal penitentiary' if he did not

plead and was found guilty at trial, . . . and that a post-trial 'sentence . . . will be a harsh one,' the court crossed into territory clearly forbidden by Rule 11.").

The government states that the cases upon which defendant Rosario relies in support of his argument that this Court violated Rule 11 are distinguishable. (Docket No. 4925 at p. 4.) Yet, the government fails to explain specifically why this is so, and instead merely provides a brief factual summary and the holding of each of these cases. (Id. at pp. 4-8.) The government does, however, suggest implicitly that these cases are distinguishable because they involve comments from the bench during or on the eve of trial, or during a change of plea hearing. (Id.) By contrast, in this case the Court's allegedly inappropriate comments occurred during status conferences. This is a difference without significance for purposes of Rule 11, because the case law teaches that what matters in terms of the timing of a judge's comments for Rule 11 purposes is whether the comments precede or post-date the defendant's acceptance of a plea offer.

In Hemphill, for instance, the Fifth Circuit Court of Appeals determined that a trial judge's comments to the defendant concerning the benefits of plea agreement **after** the defendant had decided to accept the same were not improper because a "district court is expected to take an active role in evaluating a plea

agreement, once it is disclosed." 678 F.3d at 672-73. The district court's comments **before** the defendant accepted the government's plea offer, namely, its "repeated and extensive description of adverse consequences to other defendants who rejected pleas, and its discussion of the 'success story' defendant who accepted a plea" violated Rule 11 because these comments "simply went too far." Id. at 673. This is so because these comments "did not evaluate the effects of a plea agreement that had been properly presented by the parties," but "tended to pressure [the defendant] into accepting an offer that the court preferred." Id.

Hemphill's holding is consistent with binding precedent from the First Circuit Court of Appeals holding that a trial judge does not violate Rule 11 by commenting on a plea the defendant has already accepted, see, e.g., Gonzalez-Colon, 582 F.3d at 129, or one that is no longer available, see Hicks, 531 F.3d at 52. Yet, the Court's allegedly improper comments in this case took place during the course of **ongoing** plea negotiations between the parties. Accordingly, to suggest that the Court's allegedly improper comments could not have violated Rule 11 merely because they did not occur on the eve of or during trial, but during status conferences, would be inconsistent with the weight of authority and binding First Circuit precedent.

The government's additional argument that the Court could not have violated Rule 11 because "it never foreclosed the possibility of a trial" is also misguided. (Docket No. 4925 at 10.) In Adams, for example, the Fifth Circuit Court of Appeals held that the trial judge violated Rule 11 by participating in plea negotiations, in spite of the fact that the defendant never pled guilty and, in fact, proceeded to trial. 634 F.2d at 842-43. Although the Fifth Circuit Court of Appeals declined to vacate the jury's guilty verdict, it did vacate the sentence and "remand[ed] for resentencing **before a different judge** . . . to extend the prophylactic scheme established by Rule 11 in order to protect defendants from the potential (but difficult to prove) effects of judicial participation in plea negotiations, and to prevent to the greatest practical extent the misimpression created by such participation." Id. (emphasis added).

The standard of review in any appeal about Rule 11 would be harmless error. See Davila, 133 S. Ct. at 2148 ("Rule 11(h), specifically designed to stop automatic vacaturs [for Rule 11 violations], calls for across-the-board application of the harmless-error prescription (or, absent prompt objection, the plain error rule."). The harmless error standard is less burdensome for defendant Rosario than the plain error standard. United States v. Gandia-Maysonet, 227 F.3d 1, 5 (1st Cir. 2000)

("The main practical difference between the two standards is that plain error requires not only an error affecting substantial rights but also a finding by the reviewing court that the error has 'seriously affected the fairness, integrity, or public reputation of judicial proceedings.'") (internal citation omitted).  The government, nonetheless, contends that "in the present case, there were no objections to what defendant claims was judicial participation in plea negotiations." (Docket No. 4925 at pp. 3-4.)  This assertion has no basis in fact.  Defendant Rosario objected to the voluntariness of his plea subsequent to the change of plea hearing, but before sentencing and before the Court ever accepted his plea.  (Docket Nos. 4729 and 4911.)  Accordingly, defendant Rosario's objection was prompt and any appellate review would be for harmless error.[8]

       In reviewing the record, the Court's comments transgressed Rule 11 insofar as the Court encouraged a plea, commented on the strength of the government's evidence, and emphasized that the defendants were exposed to life sentences if convicted at trial.  Indeed, the Court's comments are most analogous to those made by the trial judge in <u>Bruce</u>, a case in

---

[8] Rule 11(h) provides that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights."

which the trial judge implored defendants to "think carefully"

about the fact that they faced **life sentences** if convicted at

trial.[9] 976 F.2d at 555, 558. For the sake of thoroughness, this

Court independently reviewed the status conference transcripts,

and included not only this Court's comments to which defendant

Rosario has made reference in his submissions, but all comments

upon which defendant Rosario might ground an argument that this

Court participated in plea negotiations. These comments include:

- "I really think that the way to move forward here is, is a plea." (Docket No. 4733 at p. 11.)

- "I think there was a lot of bad evidence against your client." (Docket No. 4741 at p. 8.)

- "You have to remember, your clients were sentenced to life imprisonment." (Docket No. 4741 at p. 10.)

- "You've got to hammer it into their heads, 25 years is better than life imprisonment." (Docket No. 4741 at p. 15.)

Additionally, the fact that plea negotiations were ongoing at the

time that the above comments were made strengthens defendant

Rosario's argument that there was a Rule 11 violation. See,

e.g., Gonzalez-Colon, 582 F.3d at 129.

According to the case law surveyed by this Court, the remedy

for judicial participation in plea negotiations is vacation of

---

[9] As the excerpts from the status conferences included in Section IV, *infra*, demonstrate, this Court reminded counsel for defendants that they faced life sentences on several occasions.

the conviction if the defendant pleads, or of the sentence if convicted at trial, and reassignment to a different judge on remand. <u>See</u> <u>United States v. Baker</u>, 489 F.3d 366 (D.C. Cir. 2007) ("[A]s is customary, we remand the case for assignment to a different judge, even though we have confidence the current judge would continue to preside fairly over this case."); <u>United States v. Pena</u>, 720 F.3d 561, 577 (5th Cir. 2013) ("[I]n light of our precedents, the appropriate remedy is vacatur of Pena's guilty pleas and sentences and reassignment to a different judge on remand."); <u>United States v. Sanya</u>, 774 F.3d 812, 821 (4th Cir. 2014) ("As is usual, we also remand the case for assignment to a different district judge."); <u>United States v. Corbitt</u>, 996 F.2d 1132, 1135 (11th Cir. 1993) ("[O]n remand the case should be reassigned to another judge even if there is no evidence that the judge is vindictive or impartial, as a means to extend the prophylactic scheme established by Rule 11 and to prevent the possible misimpression created by the judge's participation."). Reassignment is an appropriate remedy because "[r]egardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea." <u>United States v. Bradley</u>, 455 F.3d 453, 465 (4th Cir. 2006).

It would not be unprecedented for this Court to recuse itself to obviate the need for any further litigation as to whether there was a Rule 11 violation.  In <u>United States v. York</u>, 274 F. Supp. 2d 1347 (M.D. Ga. 2003), a district judge recused himself for this very reason.  There, the trial judge had rejected a plea agreement between the parties, finding that the stipulated sentencing recommendation was too lenient.  <u>Id.</u>  Defense counsel later asked the judge what sentence he thought would be appropriate; the judge responded that that he thought a sentence of 20 years "might be acceptable," although the judge cautioned the parties that his response "should not be interpreted as "participation in plea bargaining."  <u>Id.</u> at 1347-48.  Defendant then requested that the trial judge recuse himself based on a Rule 11 violation.  The court held as follows:

> Whether this Court's remarks were invited or uninvited, harmless or prejudicial, there is too much at stake in this case to risk the possibility of error. If this case goes to trial, numerous witnesses will be called upon to testify about traumatic events in their lives and it is important that the Court take what steps it can now to ensure that they are not obliged to have to recount those events a second time because of perceived errors in how the plea negotiations were handled.  In view of the foregoing, therefore, the Court is of the opinion that it should recuse itself from further proceedings in this case.  The Defendant's Motion to Recuse is hereby granted.  The Clerk of Court is directed to

reassign this case and notify all counsel accordingly.

In light of the fact that defendant's argument that this Court's comments crossed the bounds of Rule 11 is non-frivolous and may have merit on appeal, the Court deems it appropriate to order the Clerk of the Court to reassign this case to a different judge, just as the court in <u>York</u> did.

## IV. Conclusion

For the forgoing reasons, defendant Rosario-Camacho's motion to withdraw his guilty plea is **GRANTED**. Accordingly, the Court need not rule on whether it participated in plea negotiations contrary to Fed.R.Crim.P. 11. Nonetheless, for the sake of allowing both parties an opportunity to pursue a disposition free from any potential Rule 11 challenge, the Court directs the Clerk of the Court to reassign this case to another district court judge.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 12, 2017.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE